**UNITED STATES DISTRICT COURT**

**DISTRICT OF COLORADO**

------------------------------------------------------------x

JENNIFER ROSENBERG,
                                        Plaintiff,

                    - *against* -

DEUTSCHE BANK AG, DEUTSCHE BANK TRUST
COMPANY AMERICAS, DEUTSCHE BANK
SECURITIES INC.,

                               Defendants.

No. 11-cv-2200 (WJM) (CBS)

------------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK

CAHILL GORDON & REINDEL LLP
Thomas J. Kavaler
Philip V. Tisne
80 Pine Street
New York, New York  10005
(212) 701-3000

GREENBERG TRAURIG LLP
Cuney Akay
1200 17th Street, Suite 2400
Denver, Colorado  80202
(303) 572-6576

Attorneys for Defendants Deutsche Bank
AG, Deutsche Bank Trust Company Americas and Deutsche Bank Securities Inc.

*TABLE OF CONTENTS*

**Page**

**BACKGROUND** ...........................................................................................................1

**ARGUMENT**

**I.    THE COURT LACKS PERSONAL JURISDICTION** .......................................5

    **A.    The Court Lacks General Jurisdiction** ................................................. 6

    **B.    The Court Lacks Specific Jurisdiction** ................................................. 9

**II.   ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK** ....................................................................................................11

**CONCLUSION** ...........................................................................................................14

### TABLE OF AUTHORITIES

**Page**

**Cases**

*AB Investments, LLC v. Gelbard*, 10-CV-00046-WDM-BNB, 2010
    WL 4054101 (D. Colo. Oct. 14, 2010) ..................................................................... 13

*Asahi Metal Industry Co.* v. *Superior Court of California, Solano
    County*, 480 U.S. 102 (1987) ................................................................................ 8

*Benton* v. *Cameco Corp.*, 375 F.3d 1070 (10th Cir. 2004) ......................................... 11

*Boone* v. *MVM, Inc.*, 572 F.3d 809 (10th Cir. 2009) ................................................... 12

*Chrysler Credit Corp.* v. *Country Chrysler, Inc.*, 928 F.2d 1509
    (10th Cir. 1991) ................................................................................................... 12

*Day* v. *Snowmass Stables, Inc.*, 810 F. Supp. 289 (D. Colo. 1993) ........................... 11

*Dudnikov* v. *Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063
    (10th Cir. 2008) ..................................................................................................... 5

*Employers Mutual Casualty Co. v. Bartile Roofs, Inc.*, 618 F.3d
    1153 (10th Cir. 2010) ........................................................................................... 12

*Fisher v. Southwest Bell Telephone Co.*, 361 F. App'x 974 (10th
    Cir. 2010) ............................................................................................................... 5

*Goodyear Dunlop Tires Operations* v. *Brown*, 131 S. Ct. 2846
    (2011) ........................................................................................................... passim

*Hanson v. Denckla, 357 U.S. 235 (1958)* ..................................................................... 7

*Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408
    (1984) ..................................................................................................................... 9

*International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945) ........................................ 5

*J. McIntyre Machinery, Ltd.* v. *Nicastro*, 131 S. Ct. 2780 (2011) ......................... 5, 8, 9

*Leroy* v. *Great Western United Corp.*, 443 U.S. 173 (1979) ....................................... 11

*McGee* v. *International Life Insurance Co.*, 355 U.S. 220 (1957) ................................. 7

*Peay* v. *BellSouth Medical Assistance Plan*, 205 F.3d 1206 (10th
    Cir. 2000) ............................................................................................................... 5

*Perkins* v. *Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) ......................... 6, 7

*Rambo* v. *American Southern Insurance Co.*, 839 F.2d 1415 (10th
    Cir. 1988) ............................................................................................................. 11

**Page**

*Soma Medical International v. Standard Chartered Bank*, 196 F.3d
   1292 (10th Cir. 1999) ............................................................................ 11

*Van Dusen* v. *Barrack*, 376 U.S. 612 (1964) ............................................. 11

**Statutes**

28 U.S.C. § 1404(a) ................................................................. 1, 12, 13, 14

**Rules**

Fed. R. Civ. P. 12(b)(2) ............................................................................ 1

Fed. R. Civ. P. 12(b)(3) ............................................................................ 1

Fed. R. Civ. P. 45(c)(3) ........................................................................... 13

**Other Authorities**

American Staffing Association, *American Staffing 2011:  Leading
   U.S. Job Growth*, 12:6 Staffing Success 12 (2011) ............................... 11

*Developments in the Law — State-Court Jurisdiction*, 73 HARV. L.
   REV. 911 (1960) ...................................................................................... 7

von Mehren & Trautman, *Jurisdiction to Adjudicate:  A Suggested
   Analysis*, 79 HARV. L. REV. 1121 (1966) ............................................... 8

**UNITED STATES DISTRICT COURT**

**DISTRICT OF COLORADO**

```
-------------------------------------------------------------x
                                                             :
JENNIFER ROSENBERG,                                          :
                                                             :
                                    Plaintiff,               :
                                                             :
                - against -                                  :      No. 11-cv-2200 (WJM) (CBS)
                                                             :
DEUTSCHE BANK AG, DEUTSCHE BANK TRUST                        :
COMPANY    AMERICAS,    DEUTSCHE    BANK                      :
SECURITIES INC.,                                             :
                                                             :
                                    Defendants.              :
                                                             :
-------------------------------------------------------------x
```

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK

Defendants Deutsche Bank AG, Deutsche Bank Trust Company Americas ("DBTCA"), and Deutsche Bank Securities Inc. ("DBSI") respectfully submit this memorandum in support of their motion to (1) dismiss the Second Amended Complaint ("SAC") of Plaintiff Jennifer Rosenberg for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); or, in the alternative, (2) transfer venue of this action to the Southern District of New York pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1404(a).

## BACKGROUND

In her original complaint in this action, Plaintiff alleged that while working for a third-party temporary staffing company "'on behalf of' DB Services New Jersey Inc.," Original Compl. ¶ 14, on a New Jersey project in an office building located in New Jersey, she developed an illness attributable to mold contamination in the New Jersey office building. According to that pleading, supervisors at her New Jersey worksite refused to accommodate her disability and,

-2-

instead, engaged in a pattern of retaliation against her. Based on those allegations, Plaintiff sought to recover for myriad types of discrimination under various federal and state discrimination statutes against DB Services New Jersey, Inc. ("DB Services NJ"), the Deutsche Bank entity conducting the New Jersey project, as well as other Deutsche Bank entities by whom Plaintiff has never been employed.

Now on its third rendition in her Second Amended Complaint, Plaintiff's story has changed somewhat but the essential facts remain the same. In approximately May 2008, she signed an employment agreement with an independent temporary staffing agency, PrO Unlimited, Inc. ("PrO"), which assigned her to work on Deutsche Bank's Americas New Data Center project ("the ANDC project") in office space leased by a Deutsche Bank entity in a building located at 100 Plaza One, Jersey City, New Jersey 07311 ("100 Plaza"). Affidavit of Deborah Herzig ("Herzig Aff.") ¶¶ 2-3; Affidavit of Arthur A. Feltman ("Feltman Affidavit") ¶¶ 3-4; *see* SAC ¶¶ 30-31 (admitting that Plaintiff "received . . . employment forms from PrO Unlimited" and was assigned to the ANDC Project in Harborside, New Jersey). The ANDC project was conducted by DB Services NJ and, although Plaintiff was not an employee of that or any other Deutsche Bank entity, she communicated with DB Services NJ personnel in the course of her assignment to the ANDC project. Herzig Aff. ¶¶ 5-6; Affidavit of Dana Hand ("Hand Aff.") ¶ 7; *see, e.g.*, SAC ¶ 82 (admitting that Plaintiff communicated with Marcus Weber and Peter Lassig (who were DB Services NJ employees, Herzig Aff. ¶ 5; Hand Aff. ¶ 7) about her work assignments). In or about July 2008, after Plaintiff complained to PrO personnel of an illness allegedly contracted from mold contamination at 100 Plaza, Plaintiff was allowed to continue to be assigned to DB Services NJ projects and complete those tasks remotely from her residence in Tuckahoe, New York. Herzig Aff. ¶¶ 9-12; *see* SAC ¶¶ 38-39 (stating that, after Plaintiff complained of illness, she was instructed "to stay home indefinitely"). Then, in or about June 2010,

-3-

having moved her residence to Colorado, SAC ¶ 72 (describing Plaintiff's unilateral decision to move to Colorado), Plaintiff signed an employment agreement with a new temporary staffing company utilized by Deutsche Bank called Icon Information Consultants, L.P. ("Icon").   Hand Aff. ¶¶ 6-7.  She now claims that during the course of her work, both in New Jersey and Colorado, she has been subjected to discrimination and retaliation that she attributes variously to animus based on her gender, national origin, religion and disability.

Pretermitting the lack of factual or legal basis for her claims, Plaintiff accurately describes the undeniable New York focus of this litigation: each defendant she has named operates principally from the New York area, Affidavit of Sandra L. West ("West Aff.") ¶¶  5, 7; *see id.* ¶ 2 (stating defendant Deutsche Bank AG operates in the United States solely through its branch Deutsche Bank AG, New York Branch); the office building Plaintiff worked in is located in New Jersey, Herzig Aff. ¶ 3; Feltman Aff. ¶¶ 3-4; all the documents relevant to Plaintiff's allegations are stored in New York or New Jersey, Hand Aff. ¶ 8; Feltman Aff. ¶ 6; and the alleged discriminators and potential witnesses, with the sole exception of Plaintiff, are either there or abroad, Hand Aff. ¶¶ 9-10; Herzig Aff. ¶¶ 13-15; Feltman Aff. ¶ 7.  Indeed, the only Deutsche Bank entity with which Plaintiff has any conceivable employment relationship — DB Services NJ — has no connection to Colorado.  That entity is incorporated in the State of New Jersey, has its principal place of business there, and provides back-office services exclusively for certain Deutsche Bank businesses, none of which is located in Colorado.  West Aff. ¶¶ 9-10.  DB Services NJ is not registered to conduct business in Colorado, and does not own any property, maintain any offices, or employ any individuals in Colorado.  *Id.*

Nevertheless, Plaintiff named Deutsche Bank AG, DBSI and DBTCA as the only defendants in her Second Amended Complaint.  However, those entities have no connection to her employment discrimination claims and only marginal, if any, connections to Colorado.  For

-4-

instance, although DBSI was once qualified with the Secretary of State of Colorado to conduct business in Colorado, it has withdrawn that registration; and, at all times relevant to Plaintiff's allegations, DBSI did not own any property,[1] maintain any offices, employ any individuals, or derive any corporate taxable income from operations in Colorado.  West Aff. ¶ 7; Affidavit of Raymond Burkhard ("Burkhard Aff.") ¶ 2.[2]  Deutsche Bank AG has never been qualified with the Secretary of State of Colorado to conduct business in Colorado and neither it nor DBTCA owns any property, maintains any office, employs any individual, or derives any corporate taxable income from operations in Colorado.  West Aff. ¶¶ 3, 5; Burkhard Aff. ¶ 2.  More revealing, however, is the fact that none of Plaintiff's allegations demonstrates any discernible employment connection between her and any of these entities, let alone supplies a Rule 11 basis for their inclusion as defendants.  Simply put, Plaintiff has never been employed by nor had any interaction or relationship of any kind with Deutsche Bank AG, DBSI or DBTCA.  Those entities find themselves the sole defendants in this action as a result of Plaintiff's transparent attempt to maintain this action in a venue that is technically improper and assuredly inconvenient for every witness involved other than herself.  This Court should dismiss the complaint for lack of personal jurisdiction over all named defendants or, alternatively, transfer this action to the Southern District of New York.

---

[1]   The SAC identifies a property at 3200 Cherry Creek South Drive, Denver, Colorado, ownership of which Plaintiff mistakenly attributes to an unnamed Deutsche Bank entity.  SAC ¶ 14.  In fact, as the West Affidavit explains, no Deutsche Bank entity has ever owned that property; and, although DBSI previously leased office space in that location and maintained an office there, it closed that office in 2007 and subleased the space to a non-Deutsche Bank company until DBSI's lease terminated on March 31, 2011.  West Aff. ¶ 8.

[2]   As it does in all 50 states, DBSI maintains a registration with the Colorado Division of Securities to sell securities in that state.  West Aff. ¶ 7 n.1.

-5-

## ARGUMENT

### I.    The Court Lacks Personal Jurisdiction

To determine whether it may exercise personal jurisdiction over a defendant in a federal question case such as this, a court must determine (1) whether any applicable statute confers jurisdiction and (2) whether the exercise of jurisdiction comports with due process. *Dudnikov* v. *Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *Peay* v. *Bell-South Medical Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). Where, as here, the relied-upon federal statutes do not provide for nationwide personal jurisdiction, federal courts resolve personal jurisdiction questions according to the law of the state in which they sit. *E.g.*, *Dudnikov*, 514 F.3d at 1070; *Fisher v. Southwest Bell Telephone Co.*, 361 F. App'x 974, 976-77 (10th Cir. 2010) (applying state long arm statute to determine personal jurisdiction in Title VII case). Because "Colorado's long-arm statute . . . confers the maximum jurisdiction permissible consistent with the Due Process Clause," in this case "the first, statutory, inquiry effectively collapses into the second, constitutional, analysis." *Dudnikov*, 514 F.3d at 1070.

To satisfy due process, a plaintiff must show that a defendant possesses certain minimum contacts with the forum state. *See International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945). If a plaintiff's cause of action arises out of or is related to the defendant's contacts with the forum state ("specific jurisdiction"), due process requires only minimum contacts demonstrating that the defendant "'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *J. McIntyre Machinery, Ltd.* v. *Nicastro*, 131 S. Ct. 2780, 2787-88 (2011) (plurality) (quoting *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958)). On the other hand, if a plaintiff's cause of action is unrelated to the defendant's in-state activities ("general jurisdiction"), due process requires a more substantial showing:  the defendant's contacts with the forum must be "so 'continuous and

-6-

systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations* v. *Brown*, 131 S. Ct. 2846, 2851 (2011) (quoting *International Shoe Co.*, 326 U.S. at 317).

**A.     The Court Lacks General Jurisdiction**

After nearly 30 years of silence on the issue, the U.S. Supreme Court provided significant new guidance on the appropriate inquiry for general jurisdiction in *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 131 S. Ct. 2846 (2011).  In that case, the plaintiffs sued Goodyear Tire and Rubber Company ("Goodyear USA"), an Ohio corporation, and three of its foreign subsidiaries for negligence in a North Carolina state court, arguing that the court could exercise general jurisdiction over the foreign subsidiaries.  Although a small percentage of tires manufactured by the foreign subsidiaries were distributed in North Carolina by other Goodyear affiliates, the subsidiaries had no place of business, employees or bank accounts in the state, did not design, manufacture or advertise their products in North Carolina, and did not ship or sell their tires directly to customers in North Carolina.  Nevertheless, the state courts uniformly agreed that the foreign subsidiaries' contacts with North Carolina were sufficient to justify the exercise of general jurisdiction over them.

The Supreme Court reversed.  It rejected the lower courts' "sprawling view" of general jurisdiction, *id.* at 2856, and held that a court may only assert general jurisdiction over non-domiciliary corporations "when their affiliations with the State are so 'continuous and systematic' as to render them *essentially at home* in the forum State."  *Id.* at 2851 (emphasis added and citation omitted).  In so holding, the Court relied heavily on its prior decision in *Perkins* v. *Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), its only decision sustaining an exercise of general jurisdiction.  In *Perkins*, a Philippine mining company was displaced by the Japanese occupation of the Philippine Islands during World War II and moved its corporate operations to

Ohio, where it was sued on causes of action unrelated to its Ohio activities. *See id.* at 438, 447-48. The president of the company, who was also its general manager and principal shareholder, moved his residence to Ohio and maintained an office there from which he conducted the company's business "consisting of directors' meetings, business correspondence, banking, stock transfers, payment of salaries, purchasing of machinery, *etc.*" *Id.* at 445. The Court concluded that due process was not offended by the exercise of general jurisdiction over such a defendant, *see id.* at 448, in a decision the *Goodyear* Court described as "[t]he textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum," *Goodyear*, 131 S. Ct. at 2856 (internal quotation marks omitted).

Those cases make clear that, as a constitutional matter, general jurisdiction is an exceptional exercise of plenary authority that is permitted only rarely and under limited circumstances. This is neither surprising nor novel. Historically, the authority to exercise general jurisdiction over a corporation was limited to the State in which the corporation was incorporated. *See, e.g.*, *Developments in the Law — State-Court Jurisdiction*, 73 HARV. L. REV. 911, 919 (1960). With no developed conception of specific jurisdiction, courts were forced to expand this limited conception of general jurisdiction in an effort to exercise greater authority over out-of-state corporations whose increasingly interstate business activities brought them into more frequent contact with in-state residents. *Id.* at 911-23; *cf. Hanson*, 357 U.S. at 250-51 (noting that as "technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase"); *McGee* v. *International Life Insurance Co.*, 355 U.S. 220, 222-23 (1957). The advent and expansion of special jurisdiction, however, provided courts with an alternate mechanism by which to achieve jurisdiction over such corporate actors, alleviating the pressure that had distorted the historically limited doctrine of general jurisdiction. *See* von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested*

-8-

*Analysis*, 79 HARV. L. REV. 1121, 1177-78 (1966). This seminal article[3] explained that the expansion of special jurisdiction should be coupled with a contraction of the law of general jurisdiction, returning it to its historically limited role and allowing the exercise of plenary authority over corporate defendants only in states that contain such a defendant's "corporate headquarters — presumably both the place of incorporation and the principal place of business, where these differ." *Id.* at 1179. In *Goodyear*, the Supreme Court resoundingly agreed: it pared back the jurisdictions entitled to exercise plenary authority over a corporation to only those states where the corporation was "*essentially at home*," observing that a corporation's "place of incorporation, and principal place of business" would be the "paradigm" examples. *Id.* at 2851, 2853-54.[4]

With these principles in mind, it cannot reasonably be argued that Plaintiff has shown (or can show) that Colorado is the jurisdiction in which any Defendant makes its home. For instance, DBTCA is incorporated under the laws of the State of New York and has its principal place of business in New York. Although DBTCA is qualified with the Secretary of State of Colorado to conduct business in Colorado, it does not own any property, maintain any offices, or employ any individuals in Colorado; and does not derived any corporate taxable income from operations in Colorado. West Aff. ¶ 5; Burkhard Aff. ¶ 2. Likewise, DBSI is incorporated under the laws of the State of Delaware and has its principal place of business in New York. Although DBSI was once qualified with the Secretary of State of Colorado to conduct business in Colora-

---

[3] The Supreme Court has frequently relied on the analysis of Professors von Mehren and Trautman. *E.g.*, *Goodyear*, 131 S. Ct. at 2851; *Asahi Metal Industry Co.* v. *Superior Court of California, Solano County*, 480 U.S. 102, 117 (1987); *Helicopteros*, 466 U.S. at 414.

[4] It is notable that, while the Court continues to struggle to find consensus as to the constitutional limits of special jurisdiction, *compare J. McIntyre Machinery*, 131 S. Ct. at 2786-90 (plurality), *with id.* at 2797-99 (Ginsburg, J., dissenting), *and id.* at 2793-94 (Breyer, J., concurring in the judgment), it spoke unanimously in *Goodyear* in returning general jurisdiction to its historically limited role.

-9-

do, it is no longer; and it does not own any property in Colorado, maintain any offices, employ any individuals, or derive any corporate taxable income from operations in Colorado. West Aff. ¶ 7; Burkhard Aff. ¶ 2. Finally, Deutsche Bank AG has its headquarters and principal place of business in Frankfurt, Germany, and its United States headquarters in New York City. Deutsche Bank AG does not conduct business in the United States, except through its branch office Deutsche Bank AG, New York Branch. West Aff. ¶ 2. Deutsche Bank AG, New York Branch, in turn, is not qualified with the Secretary of State of Colorado to conduct business in Colorado; does not own any property, maintain any offices, or employ any individuals in Colorado, *id.* ¶ 3; and does not derive any corporate taxable income from operations in Colorado, Burkhard Aff. ¶ 3. Under *Goodyear*, these minimal or non-existent connections are not constitutionally sufficient to justify the exercise of general jurisdiction.

**B.      The Court Lacks Specific Jurisdiction**

As the Supreme Court recently explained, "[w]here a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' it submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised *in connection with the defendant's activities touching on the State*." *J. McIntyre Machinery*, 131 S. Ct. at 2787-88 (quoting *Hanson*, 357 U.S. at 253) (emphasis added and citation omitted). Thus, the touchstone of specific jurisdiction is the requirement that the plaintiff show that the cause of action arises from or relates to the defendant's contacts with the state. *See Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 409 (1984).

There can be no reasonable suggestion that Plaintiff has shown (or can show) that her claims arise from or relate to Defendants' contacts with Colorado. Plaintiff alleges various forms of *employment* discrimination. None of the Defendants employs any person in Colorado,

-10-

West Aff. ¶¶ 3, 5, 7, including Plaintiff, who is employed by Icon, Hand Aff. ¶ 6.[5]  Therefore, Plaintiff's employment discrimination claims simply cannot "arise[] out of or relate[] to [Defendants'] contacts with the forum," *Goodyear*, 131 S. Ct. at 2853 (internal quotation marks and alterations omitted), and specific jurisdiction is unavailable, *e.g.*, *Day* v. *Snowmass Stables, Inc.*,

---

[5]   As the Hand Affidavit demonstrates, Plaintiff has an employment contract with and receives her paycheck and W2 from Icon.  Hand Aff. ¶ 6.  Her most recent W2 clearly names Icon as her employer:

| | a Employee's social security number | OMB No. 1545-0008 | This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it. | |
|---|---|---|---|---|
| b Employer identification number (EIN) | | 1 Wages, tips, other compensation | 2 Federal income tax withheld | |
| c Employer's name, address, and ZIP code<br>Icon Information Consultants LP<br>100 Waugh Dr.<br>Suite #330<br>Houston, TX 77007 | | 3 Social security wages | 4 Social security tax withheld | |
| | | 5 Medicare wages and tips | 6 Medicare tax withheld | |
| | | 7 Social security tips | 8 Allocated tips | |
| d Control number | | 9 Advance EIC payment | 10 Dependent care benefits | |
| e Employee's first name and initial   Last name   Suff.<br>Jennifer   Rosenberg<br>PO Box 2309<br>Edwards, CO 81632 | | 11 Nonqualified plans | 12a See instructions for box 12 | |
| | | 13 Statutory employee / Retirement plan / Third-party sick pay | 12b | |
| | | 14 Other<br>8125 | 12c | |
| | | | 12d | |
| f Employer's address and ZIP code | | | | |
| 15 State  Employer's state ID number<br>CO | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form **W-2** Wage and Tax Statement   2010   Department of the Treasury—Internal Revenue Service   Safe, accurate FAST! Use   e-file

Copy C—For EMPLOYER'S RECORDS (See Notice to Employee on the back of Copy B.)

-11-

810 F. Supp. 289, 292 (D. Colo. 1993) (no special jurisdiction where plaintiff's claims did not

arise from defendant's Colorado contacts).[6]

## II.   Alternatively, This Action Should Be Transferred to the Southern District of New York

Even if it were jurisdictionally sound, this action should be transferred to the

Southern District of New York.  The federal venue statutes are intended "to protect the defendant

against the risk" — manifest in this action — "that a plaintiff will select an unfair or inconven-

ient place of trial."  *Leroy* v. *Great Western United Corp.*, 443 U.S. 173, 184 (1979); *see also*

*Van Dusen* v. *Barrack*, 376 U.S. 612, 635-36 (1964) (observing that venue transfer statute should

be interpreted to discourage forum shopping).  To effectuate that protection, a district court is

---

[6] Construed liberally, Plaintiff's latest pleading might be deemed to attempt to allege that some Deutsche Bank entity controls her conditions of employment and should thus be considered her "employer."  *See* SAC ¶¶ 47-62.  She is wrong:  as detailed in the Hand and Herzig Affidavits, Herzig Aff. ¶ 2; Hand Aff. ¶ 6, at all relevant times Plaintiff was party to an employment agreement with a third party temporary staffing company, first ProO and then Icon, and was thus an "employee" of one of those companies — an entirely legal and routine practice in the U.S. economy, *see* American Staffing Association, *American Staffing 2011:  Leading U.S. Job Growth*, 12:6 Staffing Success 12, 34-43 (2011) (discussing factors responsible for increasing importance of temporary staffing employment in U.S. economy), *available at* http://www.asa-digital.net/amstaffingassoc/spissue#pg14 (last visited Jan. 12, 2011); *see also* Feltman Aff. ¶ 2.  Even if Plaintiff could, however, be considered an "employee" of some Deutsche Bank entity — a contention Defendants dispute — that entity could only be DB Services NJ, not any of the Defendants named here.  *See generally Benton* v. *Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) (holding, for personal jurisdiction purposes, that "parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity"); *see also Goodyear*, 131 S. Ct. at 2857.  Although DB Services NJ was named as a defendant in Plaintiff's first complaint in this action, she elected not to sue that entity in her new pleading, a tactical decision made for good reason.  There can be no suggestion that DB Services NJ is subject to general jurisdiction in Colorado, *see* West Aff. ¶ 10; Burkhart Aff. ¶ 3; and its alleged contacts with the State — unspecified emails allegedly received by Plaintiff in Colorado — are constitutionally insufficient to subject it to specific jurisdiction in Colorado, *e.g.*, *Soma Medical International v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999) ("It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts."), especially because the alleged emails were received in Colorado only due to Plaintiff's unilateral decision (SAC ¶ 72) to move there, *e.g.*, *Rambo* v. *American Southern Insurance Co.*, 839 F.2d 1415, 1420 (10th Cir. 1988) (holding jurisdiction cannot be founded on defendant's contacts with forum resulting from unilateral acts of plaintiff).  Moreover, any claims against DB Services NJ in a Colorado forum would be subject to a *forum non conveniens* transfer on the ground that New Jersey, not Colorado, is the appropriate forum.

-12-

authorized transfer an action to any district in which it could have been brought "[f]or the con-

venience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).[7]  In exercising

that discretion, a district court is to consider the following factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of
> proof, including the availability of compulsory process to insure attendance of
> witnesses; the cost of making the necessary proof; questions as to the enforceabil-
> ity of a judgment if one is obtained; relative advantages and obstacles to a fair tri-
> al; difficulties that may arise from congested dockets; the possibility of the exist-
> ence of questions arising in the area of conflict of laws; the advantage of having a
> local court determine questions of local law; and, all other considerations of a
> practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.* v. *Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

As the Court of Appeals has emphasized, "[t]he convenience of witnesses is the

most important factor in deciding a motion under § 1404(a)."  *Employers Mutual Casualty Co. v.*

*Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010).[8]  There can be little doubt that New

York will be a more convenient forum for every witness other than Plaintiff.  "To demonstrate

inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the

quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to

come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory

---

[7]  This action could have been brought in the Southern District of New York because that court can exer-
cise personal jurisdiction over each of the Defendants, and venue over Plaintiff's Title VII and Americans
with Disabilities Act ("ADA") claims is proper there, 42 U.S.C. § 2000e-5(f)(3) (providing for venue,
*inter alia*, "in the judicial district in which the employment records relevant to [the challenged employ-
ment] practice are maintained and administered"); Hand Aff. ¶ 8 (noting that documents relevant to Plain-
tiff's discrimination claims are located in New York and New Jersey).

[8]  Some factors are neutral here.  For instance, there can be no suggestion that the enforceability of any
judgment obtained in this action will be compromised if the action is transferred to the Southern District
of New York, or that Plaintiff cannot receive a fair trial in that forum.  And, to the extent choice of law
issues remain relevant, they favor transfer to the Southern District of New York, a forum with a more sig-
nificant connection than Colorado to the occurrences and the parties.  *E.g.*, *Boone* v. *MVM, Inc.*, 572 F.3d
809, 811-12 (10th Cir. 2009) (noting "Colorado follows the Restatement (Second) of Conflict of Laws
and applies the law of the state with the most significant relationship to the occurrence and parties").

-13-

process would be necessary." *Id.* (internal quotations and alterations omitted).  As the Hand, Feltman and Herzig Affidavits show, other than Plaintiff, every conceivable witness with material testimony resides either in the New York area or in Germany.  Maintaining this action in Colorado will seriously disrupt their schedules and impose upon them substantial unnecessary cost, requiring them to travel at least 2000 miles and to remain in Colorado for substantial portions, if not the entirety, of any trial.  Worse, many of those witnesses are not employed by or under the control of Defendants and, because they reside outside this Court's subpoena power, cannot be compelled to appear at a Colorado trial.  *See* Fed. R. Civ. P. 45(c)(3).  Instead, the parties and this Court will be forced to rely solely upon depositions for testimony from some of the most central witnesses in this case:  other temporary staffing agency employees, like Plaintiff, who were utilized by DB Services NJ on the ANDC project, as well as the former DB Services NJ employee, Markus Weber, singled out by Plaintiff as the principal discriminator in her complaint filed with the Equal Employment Opportunity Commission ("EEOC").  Herzig Aff. ¶ 13; Hand Aff. ¶ 9; *see* Feltman Aff. ¶ 7 (listing PrO employees with potentially relevant testimony); Hand Aff. ¶ 10 (listing other third party staffing employees with potentially relevant testimony); *see also AB Investments, LLC v. Gelbard*, 10-CV-00046-WDM-BNB, 2010 WL 4054101, at *5-6 (D. Colo. Oct. 14, 2010) (unavailability of compulsory process for California witnesses favored transfer from Colorado to California).  Proceeding in a forum without the live testimony of witnesses so critical to a fair resolution of this dispute would disserve the interests of justice and, as a result, this "most important factor" tips decidedly in favor of the requested transfer.

Accordingly, this Court should exercise its discretion under § 1404(a) to transfer this action to the Southern District of New York.

-14-

## CONCLUSION

For the foregoing reasons, Plaintiff's claims should be dismissed for lack of personal jurisdiction over Defendants.  To the extent they are not, Plaintiff's claims should be transferred to the Southern District of New York under § 1404(a) because this District is an inconvenient forum.

Dated: New York, New York
January 12, 2012

                                CAHILL GORDON & REINDEL LLP

                                By:  /s/ Thomas J. Kavaler
                                       Thomas J. Kavaler
                                       Philip V. Tisne
                                80 Pine Street
                                New York, New York 10005
                                (212) 701-3000

                                GREENBERG TRAURIG LLP
                                Cuneyt Akay
                                1200 17th Street, Suite 2400
                                Denver, Colorado  80202
                                (303) 572-6576

                                Attorneys for Defendants Deutsche Bank AG, Deutsche Bank Trust Company Americas and Deutsche Bank Securities Inc.