IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02200-WJM-CBS

JENNIFER ROSENBERG,
    Plaintiff,
v.

DEUTSCHE BANK AG;
DEUTSCHE BANK TRUST COMPANY AMERICAS; and
DEUTSCHE BANK SECURITIES INC.;
    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

    THIS MATTER comes before the court on "Defendants' Notice of Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Transfer to the Southern District of New York" (doc. #27) and the Brief in Support of the Motion to Dismiss (doc. #29) both filed January 12, 2012 (collectively "Motion to Dismiss"). Pursuant to the Memorandum (doc. #31) from the same day, this matter was referred to the Magistrate Judge. On February 3, 2012, *pro se* Plaintiff Jennifer Rosenberg ("Ms. Rosenberg") filed "Plaintiff's Motion to Strike Defendant's [sic] Motion to Dismiss or Transfer Venue" ("Response") (doc. #49). At a Preliminary Scheduling Conference held on February 14, 2012, Plaintiff informed the court that she would like the Motion to Strike to be treated as her Response to Defendants' Motion to Dismiss. *See* Minute Order (doc. #56). The Defendants informed the court that they did treat Plaintiff's Motion to Strike as a Response and on February 10, 2012, filed a Reply (doc. #51). The matter has been

fully briefed. Having carefully considered the arguments presented in the parties' briefs, as well as applicable case law, the court recommends that Defendants' Motion to Dismiss be granted.

## BACKGROUND

Ms. Rosenberg states that on or about June 26, 2008, she started working at Deutsche Bank's Harborside, New Jersey location. *See* Second Amended Complaint ("SAC") (doc. #25, at page 5 of 25). It is undisputed that Plaintiff was hired to work on the Americas New Data Center ("ANDC") project. *Id.* Sometime after Ms. Rosenberg was hired, in 2008, she requested an ADA accommodation to work from her home in New York, which was granted.[1] *Id.* at 6. On February 13, 2009, Plaintiff was terminated "as a result of the ANDC project being cancelled." *Id.* at 3, 7. Ms. Rosenberg was rehired on March 27, 2009, by Bennett Chin, "who works in New Jersey," to work in the Global Security and Risk Department. *Id.* at 10. Around October 2009, Plaintiff was reassigned to work for Peter Lassig and Markus Weber, both employees of Deutsche Bank Services New Jersey ("DB Services NJ") working at the Haborside location. *Id.* at 11. "On March 4, 2010 . . . . Plaintiff notified Deutsche Bank in advance *of her intent to relocate* and provided them with a new address." *Id.* at 12 (emphasis added). In May 2010 Ms. Rosenberg moved to Eagle County, Colorado, where she now resides. *Id.* at 2-3.

Defendant Deutsche Bank, AG ("DB") is an international bank with its headquarters in Frankfurt, Germany. *See* SAC (doc. #17, page 3 of 25); *see also* Affidavit of Sandra L. West in Support of Defendants' Motion to Dismiss ("West Affidavit") (doc. #35, at page 1 of 4). DB's United States headquarters is located at 60 Wall Street, New York, NY. *See* West Affidavit (doc. #35, at page 1 of 4).

---

[1] Defendants indicate this was "on or about July 2008." *See* Motion to Dismiss (doc. #29, at page 2 of 14).

Defendant Deutsche Bank Trust Company Americas ("DBTCA") is a wholly owned subsidiary of Deutsche Bank Trust Corporation ("DB Trust"), which is a wholly owned subsidiary of Taunus Corporation, which in turn is a wholly owned subsidiary of DB. *See* SAC (doc. #25, at page 3 of 25); *see also* West Affidavit (doc. #35, at page 2 of 4). DBTCA provides financial custodial and private banking services to clients of DB. West Affidavit (doc. #35, at page 2 of 4). DBTCA is incorporated under the laws of the State of New York and has its principal place of business in New York. *Id.* DBTCA is registered with the Colorado Secretary of State to do business in Colorado, *id.,* however DBTCA does not own any property, maintain offices, or employ any individuals in Colorado. *Id.*

Defendant Deutsche Bank Securities, Inc. ("DBSI") is a wholly owned subsidiary of Deutsche Bank U.S. Financial Markets Holding Corporation, which is a wholly owned subsidiary of Taunus Corporation. *See* SAC (doc. #25, at page 3 of 25); *see also* West Affidavit (doc. #35, at page 2 of 4). DBSI provides securities and investment banking services to corporations, governments, and institutional investors. West Affidavit (doc. #35, at page 2 of 4). DBSI is incorporated under the laws of the State of Delaware and has its principal place of business in New York. *Id.* DBSI was previously qualified with the Colorado Secretary of State, but withdrew its registration effective December 16, 2011. *Id.* Until March 31, 2011, DBSI leased office space at 3200 Cherry Creek South Drive, Denver Colorado, which it subleased when it closed its office in 2007. *Id.* Other than this leased office space, DBSI does not own any property, maintain any offices, or employ any individuals in Colorado. *Id.*

Plaintiff's Claim One is for unlawful sex discrimination in violation of Title VII. Ms. Rosenberg specifically claims that Defendant DB: (1) treated her less favorably than male

employees and paid Plaintiff less than her male colleagues. Plaintiff's Claim Two alleges discrimination based on a disability. Ms. Rosenberg states that she requested the accommodation of "predictable work schedule and reasonable working hours," which Defendant DB failed to accommodate. *Id.* at 20. Claim Three is for hostile work environment. Plaintiff claims that after she filed an EEOC charge Defendant DB "created a hostile and abusive [work] environment." *Id.* In her Fourth Claim, Plaintiff alleges discrimination based on religion. Ms. Rosenberg claims that Defendant DB sent her notification of an official DB dinner party at the former Nazi Headquarters, the "Reichstag," and required Plaintiff to work and electronically harassed her on Jewish holidays. *Id.* at 22. Plaintiff's Claim Five is for discrimination based on national origin. Ms. Rosenberg alleges that Defendant DB treated her differently than her non-resident German counterparts; specifically, that she received less compensation, was given no paid-time off, was required to work more regular and overtime hours, and was denied benefits and legal protections. Claim Six is against "The Defendant" for intentional infliction of emotional distress. *Id.* at 24. In Claims One through Five Plaintiff makes allegations against Defendant DB only. In Claim Six Ms. Rosenberg only lists "The Defendant," singular without specifying which of the three Defendants the claim is against.

Defendants have moved to dismiss for a lack of personal jurisdiction pursuant to Rule12(b)(2). Defendants argue that the court lacks personal jurisdiction over them because: (1) Defendants are not Plaintiff's employer and did not engage in any acts that would allow the court to exercise specific personal jurisdiction over them; and (2) Defendants do not have sufficient contacts with Colorado for the court to maintain general personal jurisdiction.

## STANDARD OF REVIEW

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court "lack[s] personal jurisdiction" over the defendant. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). "In the preliminary stages of litigation, Plaintiff's burden is light." *Walker v. Wegener*, 2012 WL 1020673, at *3 (D. Colo. Mar. 2, 2012) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).[2] "Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other materials, Plaintiff[ ] need only make a *prima facie* showing that jurisdiction exists." *Walker*, 2012 WL 1020673, at *3 (internal citation omitted). Plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).

"Whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action is determined by the law of the forum state." *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988) (quoting *Yarbough v. Elmer Bunker & Assocs.*, 669 F.2d 614, 616 (10th Cir. 1982) (internal quotation marks omitted)). "In Colorado, the assertion of personal jurisdiction must both: (1) satisfy the requirements of the long-arm statute; and (2) comport with due process." *Walker*, 2012 WL 1020673, at *3 (citing *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990)). Colorado's long-arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause," *Dudnikov v. Chalk Vermillion Fine Arts, Inc.*, 514 F.3d

---

[2]   Copies of unpublished cases cited are attached to this Recommendation.

1063, 1070 (10th Cir. 2008) (quoting *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005)). and "subjects a defendant to personal jurisdiction for engaging in – either in person of by an agent – the 'commission of a tortious act within this state,' or the 'transaction of any business within this state.'" *Walker*, 2012 WL 1020673, at *3 (quoting Colo. Rev. Stat. §§ 13-1-124(1)(a)-(b) (2007)). "To comport with due process, the defendant foreign corporation must have minimum contacts with the forum state such that maintenance of the lawsuit would not offend 'traditional notions of fair play and substantial justice.'" *Beyer v. Camex Equip. Sales & Rentals, Inc.*, 2011 WL 2670588, at * 3 (D. Colo. July 8, 2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The minimum contacts requirement protects a defendant from "being subject to the binding judgment of a forum with which [it] has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted). The defendant must have "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Id.* "[T]he question of whether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) (internal quotation marks omitted).

The minimum contacts analysis differs depending on whether the court is exercising specific or general jurisdiction. *OMI Holdings*, 149 F.3d at 1090-91. "A court may assert specific jurisdiction if the defendant has purposefully directed [its] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Beyer*, 2011 WL 2670558, at *3 (quoting *Burger King Corp.*, 471 U.S. at 472

(internal quotations marks omitted)). "General jurisdiction, on the other hand arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts." *Beyer*, 2011 WL 2670558, at *3 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (internal quotation marks omitted)).

The parties dispute whether Plaintiff was an employee of Defendant DB or any of its subsidiaries. Plaintiff asserts she was an employee of Defendant DB. *See* SAC (doc. #25, at page 2 of 25); *see also* Affidavit of Jennifer Rosenberg (doc. #42-2, at page 2 of 4), attached to "Plaintiff's Motion to Appoint Counsel and Strike or Restrict Notice of Charging Lien" (filed January 18, 2012) (doc. #42). Defendants argue that Plaintiff was hired by PrO Unlimited, Inc., an independent temporary staffing company, and assigned to work on DB's ANDC Project in office space leased DB Services NJ. *See* Affidavit of Dana Hand in Support of Defendants' Motion to Dismiss ("Hand Affidavit") (doc. #33, at page 2 of 4). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor." *Rambo*, 839 F.2d at 1416. *See also Beyer*, 2011 WL 2670588, at * 2 ("Any factual conflicts must be resolved in the plaintiff's favor.") . While the court will consider Plaintiff an employee of Defendant DB for purposes of its personal jurisdiction analysis, Ms. Rosenberg has not claimed that she was an employee of either Defendant DBTCA or Defendant DBSI, therefore, the court will not presume any employment relationship existed between Ms. Rosenberg and those defendants.

# ANALYSIS

## A.   *Specific Jurisdiction*

In order to exercise specific jurisdiction, the court must apply a two prong analysis: (1) "whether the defendant purposefully availed himself of the privilege of conducting business in the forum state;" and (2) "whether the litigation 'arises out of' the defendant's forum-related contacts." *Found. for Knowledge in Dev. v. Interactive Designs*, 234 P.3d 673, 678 (Colo. 2010) (quoting *Archangel Diamond Corp.*, 123 P.3d at 1194).

"This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Rambo*, 839 F.2d at 1419. "It is essential in each case that there be *some act by which the defendant purposefully avails itself* of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (emphasis added).

Plaintiff asserts that since "the majority of alleged unlawful employment practices took place in Colorado," this court may properly maintain jurisdiction over Defendants. *See* SAC (doc. #25, at page 2 of 25). Defendants counter that, "each Defendant [ ] named operates principally from the New York area." *See* Motion to Dismiss (doc. #29, at page 3 of 14). It is unclear from the Complaint where Plaintiff resided at the time she was hired, but she reported in person to the Haborside, New Jersey location until her ADA request to work from home was granted. *See* SAC (doc. #25, at page 5 of 25). Also, Ms. Rosenberg "interviewed [for the position] in New Jersey." *Id.* at 4. It is undisputed that it was Plaintiff's unilateral decision to relocate to Colorado. "Plaintiff notified Deutsche Bank [ ] of *her intent* to relocate [to

8

Colorado]." *Id.* at 12 (emphasis added). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.* Ms. Rosenberg's unilateral decision to relocate to Colorado cannot serve as the basis for specific jurisdiction over Defendants. Where Defendants' contacts with the forum were driven by the Plaintiff's choice of residence, Defendants did not purposefully avail themselves of the privilege of conducting business in Colorado.

Furthermore, under the specific jurisdiction analysis, Plaintiff's claims must arise out of Defendants' forum-related contacts. Plaintiff's claims are based on factual allegations of conduct by non-party subsidiary DB Services NJ and its employees rather than acts of any of the Defendants. Therefore, Defendants' contacts with Colorado, to the extent there are any, are unrelated to the claims in this action.

  B. *General Jurisdiction*

Although the court concludes that it lacks specific jurisdiction over Defendants, it must further inquire whether general jurisdiction exists. "When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." *Intercon, Inc. v. Bell Atl. Internet Solutions*, 205 F.3d 1244, 1247 (10th Cir. 2000). "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *Benton*, 375 F.3d at 1079 (quoting *OMI Holdings*, 149 F.3d at 1091). This court may maintain general jurisdiction over Defendants' "when their affiliations with the State are so 'continuous and systematic' as to render them

essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).   For corporate entities this is generally: (1) the place of incorporation; or (2) the principal place of business. *Id.* at 2853-54.

As noted above, none of the Defendants are incorporated under the laws of the State of Colorado nor do any of them have their principal place of business in Colorado.  According to affidavits submitted by Defendants, none of them own any property, maintain any offices,[3] or employ any individuals in Colorado.[4]  *See* West Affidavit (doc. #35, at page 2 of 4).  This is bolstered by Plaintiff's own statements, "Plaintiff's lead supervisor was based in Germany, and she had colleagues in New Jersey, Singapore, Austria, and the UK."  *See* SAC (doc. #25, at page 16 of 25).

Plaintiff argues that personal jurisdiction is proper because "Deutsche Bank is licensed to do business in Colorado under numerous entities including DBTCA and DBSI."  *See* SAC (doc. #25, at page 3 of 25).  It is undisputed that during the relevant times, Defendants DBTCA and DBSI were registered with the Colorado Secretary of State.  Plaintiff also states that Defendant DBTCA "participated in at least 50 Jefferson and Denver County, Colorado foreclosure actions during [ ] January 2012."  *See* Response (doc. #49, at page 9 of 12).

Even assuming that Plaintiff was an employee of Defendant DB, this is the only contact between Defendant DB and Colorado; and is a result of Ms. Rosenberg's unilateral decision to

---

[3] Plaintiff asserts that Deutsche Bank has an office at 3200 Cherry Creek South Drive, Denver, Colorado 80209-3244 (the "Cherry Creek office").  *See* SAC (doc. #25, at page 3 of 25).  Defendants, through affidavits, have represented that the Cherry Creek office was actually leased by Defendant DBSI, which maintained an office there until 2007, after which the space was subleased until the expiration of the lease.  *See* West Affidavit (doc. #35, at page 3 of 4).

[4] There is a factual dispute as to whether Ms. Rosenberg is an employee of Defendant DB, or one of its subsidiaries, that is resolved in Plaintiff's favor for the purposes of determining personal jurisdiction.  However, at this stage of litigation, the court is making no conclusion as to whether or not Ms. Rosenberg was an employee of Defendant DB, or any of its wholly owned entities.

relocate to Colorado, which, as previously stated, cannot serve as the basis of the court's exercise of personal jurisdiction. As to Defendants DBTCA and DBSI, Plaintiff does not allege any conduct by either defendant as the bases of her claims. Furthermore, neither defendant has an employment relationship with Plaintiff. It seems that Ms. Rosenberg names Defendants DBTCA and DBSI in order to impute their Colorado contacts to Defendant DB.

"The mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is the sole owner of the subsidiary." *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (1st Cir. 1980) (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925)). "A holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity." *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974).

In the Tenth Circuit, "courts have applied four different tests to determine whether a parent corporation is liable for the acts of its subsidiary." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993). The four tests are: "(1) the agency theory under which the plaintiff must establish that the parent exercised a significant degree of control over the subsidiary's decision-making; (2) the alter ego test which . . . permits the court to pierce the corporate veil when the court must prevent fraud, illegality or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability from a crime; (3) the instrumentality test under which the plaintiff must establish that the parent exercises extensive control over the acts of the subsidiary giving rise to the claim of wrongdoing; and (4) the integrated enterprise test

where the lack of separateness between the parent and subsidiary warrant treating the companies as integrated or as a single entity." *Frank*, 3 F.3d at 1362 n. 2.

Neither side advocates a specific test; because Plaintiff claims to be an employee of the parent company, the most appropriate test is the integrated enterprise test. The four factors considered under this test include: "(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." *Id.* "When one defendant completely controls another, the latter's contacts with the forum may fairly be imputed or attributed to the former." *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020 (10th Cir. 1990).

While Plaintiff makes various vague and conclusory statements, including, "Defendant [DB] owns the Companies that [it] claim[s] employ[s] the Plaintiff," she has provided no facts that would defeat the presumption that Defendant DB and any of its wholly owned subsidiaries are not separate and distinct corporate entities. *See* Response (doc. #49, at page 5 of 12). Registration with the Colorado Secretary of State of Defendants DBTCA and DBSI and the foreclosure actions cannot be imputed to Defendant DB and serve as a basis for the court to exercise general jurisdiction over Defendant DB.

In her Response, Plaintiff introduces RREEF, another non-party subsidiary of Defendant DB, arguing that because this wholly owned entity, conducts business and owns property in Colorado, the court has jurisdiction over Defendants. Even assuming this is true, it is completely irrelevant to the issue of personal jurisdiction. RREEF is not a named Defendant in this action nor are any claims based on alleged conduct of RREEF.

Analysis of personal jurisdiction over Defendants DBTCA and DBSI requires more scrutiny. "However, the exercise of jurisdiction depends on the *nature* of those contacts." *Id.* The court must determine whether these contacts provide a *sufficient* basis for the court to maintain personal jurisdiction over Defendants DBTCA and DBSI.

Although Defendants DBTCA and DBSI were registered with the Colorado Secretary of State during the timeframe of Plaintiff's allegations, they have no official presence in Colorado: they do not own any property, maintain any offices, or employ any individuals in Colorado. Furthermore, none of Ms. Rosenberg's claims are based on alleged conduct of Defendants DBTCA or DBSI and are completely unrelated to either of these Defendants' contacts with Colorado.

Defendants DBTCA and DBSI's contacts with Colorado are far too attenuated to constitute the type of "continuous and systematic" activity that is necessary to support this court's general jurisdiction over the defendant. "[I]t has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there." *Int'l Shoe Co.*, 326 U.S. at 317. Furthermore, the contacts in this case are even more limited than in other cases where the contacts between the defendant and the forum were found inadequate to satisfy the constitutional standard for exercising general jurisdiction. *See, e.g., Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 418 ("[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."); *Am. Exp. Int'l, Inc.*, 889 F.2d 1175, 1179-81 (1st

Cir. 1989) (maintenance and use of bank accounts in forum, and training of employees in forum insufficient to confer general jurisdiction); *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 214-15, 217 (1st Cir.1984) (no general jurisdiction over defendant that advertised in journals which circulate in forum and employed eight sales representatives to solicit orders, including two residents, within the forum). Defendants DBTCA and DBSI's lack of official presence in Colorado makes it clear that they have not "engaged in continuous and systemic activity" in the forum state.

Furthermore, "[e]ven if defendant's actions created sufficient minimum contacts, [the court] must still consider whether the exercise of personal jurisdiction over defendant would offend traditional notions of 'fair play and substantial justice.'" *Intercon*, 205 F.3d at 1247. "This inquiry requires a determination of whether the district court's exercise of jurisdiction over defendant is reasonable in light of the circumstances surrounding the case." *Id.* The court considers the following factors in deciding whether the exercise of jurisdiction is reasonable: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id.* at 1249.

First, Defendants' principal place of business is in New York and none of the witnesses, other than Plaintiff, are located in Colorado; certainly there would be some burden of Defendants to litigate this case in Colorado. Second, Colorado has a "manifest interest" in providing a forum in which its residents can seek redress for intentional injuries caused by out-of-state actors. *See Burger King Corp.*, 471 U.S. at 473. Third, Plaintiff is an individual with limited resources. However, Ms. Rosenberg made a unilateral decision to relocate to Colorado. Fourth, Colorado

does not seem to be the most efficient place to litigate the dispute. As stated above, the alleged discriminators and witnesses are located in New York, New Jersey, or abroad. As for the fifth factor, it can reasonably be assumed that both Colorado and New York share an interest in enforcing the laws against employment discrimination.

Defendant DB lacks contacts with Colorado, therefore, there is no basis for the court to exercise personal jurisdiction. As to Defendants DBTCA and DBSI, the court does not find the contacts sufficient to satisfy due process. First, Defendants DBTCA and DBSI's contacts are unrelated to Plaintiff's alleged injuries, therefore the court can not exercise specific jurisdiction. Second, Plaintiff has failed to demonstrate Defendants DBTCA and DBSI had such "continuous and systematic" contacts with Colorado as to allow this court to assert general jurisdiction over them. Furthermore, even if the contacts were sufficient, personal jurisdiction would not be reasonable.

Pursuant to the court's February 14, 2012, Minute Order (doc. #56), Plaintiff's Motion for Leave to Amend Second Amended Complaint ("Motion to Amend") (doc. #45), was held in abeyance pending decision on Defendants' Motion to Dismiss (doc. #29). The Third Amended Complaint and Jury Demand (doc. #46), filed on January 20, 2012, is against the same Defendants named previously. Because the parties are the same, and the court does not have personal jurisdiction over the Defendants, allowing the Motion to Amend would not change the court's ability to maintain personal jurisdiction over Defendants in this action.

Accordingly, IT IS RECOMMENDED that:

1. Defendants' Motion to Dismiss (doc. #27) be GRANTED; and

2. Plaintiff's Motion to Amend (doc. #45) be DENIED.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999). (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morals-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 22nd day of May, 2012.

                                                               BY THE COURT:

                                                             s/Craig B. Shaffer
                                                         United States Magistrate Judge